**Halbert D. BROOKS, Appellant,**

v.

**WASHINGTON TERMINAL COMPANY.**

**No. 78–1025.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 30, 1978.

Decided Jan. 17, 1979.

---

James R. Scullen, Washington, D. C., for appellant.

Richard W. Turner, Washington, D. C., with whom Daniel V. S. McEvily, Washington, D. C., was on the brief, for appellee.

Before TAMM and ROBINSON, Circuit Judges, and JOHN H. PRATT, United States District Judge for the District of Columbia.*

Opinion for the court filed by TAMM, Circuit Judge.

TAMM, Circuit Judge:

Halbert D. Brooks appeals from a judgment of the United States District Court for the District of Columbia (Richey, J.) in an action brought under the Federal Employers' Liability Act (F.E.L.A), 45 U.S.C. §§ 51–60 (1970). The jury returned a verdict for the plaintiff, Brooks, but the district court refused to enter judgment thereon and granted the renewed motion of the defendant, Washington Terminal Company, for a directed verdict.[1] We affirm.

## I

In the early morning hours of June 10, 1975, Brooks, a railroad car foreman for the Washington Terminal Company, was assaulted by Darryl Garnett, an equipment service cleaner who had been employed by the defendant for five months. At 11:45 p. m. on June 9, 1975, Garnett reported to Brooks for work, and Brooks placed him under the supervision of his assistant car foreman, James Deal, for the midnight to 8:00 a. m. shift. Garnett subsequently failed to appear for his 1:00 a. m. meeting with Deal, and failed to perform his duties for the remainder of that night. Deal took no steps to locate Garnett until 5:45 a. m. when Brooks telephoned and inquired into his whereabouts. Thereafter, Brooks and Deal began looking for Garnett. They came upon him walking along the tracks carrying a water hose with a metal end, used in his car cleaning duties, and a woman's blue shoulder bag.

Brooks asked Garnett where he had been, and Garnett replied, "when I finish my work, I go to sleep." Transcript at 46. Brooks commented that the company did not pay Garnett to sleep and told him to sign out as of 4:30 a. m. and go home for the day. Garnett turned as if to go, but spun around and hit Brooks repeatedly with the hose he was carrying. As Garnett started down the tracks toward his locker, he threatened to get his gun and come back to shoot both of them.

Police employed by the defendant were called and placed Garnett under arrest in the locker room. A search of Garnett yielded what appeared to be marijuana. Garnett was taken to the Superior Court of the District of Columbia and charged with assault. While Garnett was being charged, a Washington Terminal Company policeman checked Garnett's record and found that he previously had been arrested for petty larceny and possession of drugs. Garnett was subsequently dismissed from employment because of the assault and because he had violated a general rule of the defendant that prohibited possession and use of drugs by employees on duty.

At trial, the defendant introduced evidence that it had required Garnett, as an applicant for employment, to obtain a "police clearance" card from the Metropolitan Police Department of the District of Columbia. The police department form had been returned with the notation: "No Record. Name File Search Jan. 7, 1975. Metropolitan Police Dept. Washington, D.C." Joint Appendix at 25.

As another part of the application process, Garnett was required to undergo an examination by defendant's physician. The defendant introduced evidence that its physician routinely checks for needle marks indicating drug use. No evidence was introduced concerning the particular examination of Garnett. On his employment application, Garnett stated he had never taken drugs.

---

\* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. *See* Fed.R.Civ.P. 50, 58.

The defendant also introduced evidence that it had checked with Garnett's only prior employer, the District of Columbia Department of Recreation, where Garnett had worked as a musician in a summer program. Garnett's former supervisor evaluated his performance, conduct and attendance as average, and indicated Garnett had been an honest, dependable and generally desirable employee.

## II

Section 1 of the F.E.L.A., 45 U.S.C. § 51 (1970), holds common carriers by railroad liable to employees "for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." The case in the district court proceeded on two theories of liability that have been developed by the Supreme Court in cases involving intentional assaults by fellow employees.

First, in *Jamison v. Encarnacion*, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082 (1930), the Court ruled that section 1 of the F.E.L.A., 45 U.S.C. § 51 (1970), applies the principle of respondeat superior, that the term "negligence" in the statute includes intentional torts, and that an assault committed by an employee in the course of the discharge of his duties and in furtherance of the work of the employer's business can serve as the basis for liability under that Act. *Id.* at 639–41, 50 S.Ct. 440.[2] *See generally* Note, *Respondeat Superior and the Intentional Tort: A Short Discourse on How to Make Assault and Battery Part of the Job*, 45 U.Cinn.L.Rev. 235 (1976). Second, in *Harrison v. Missouri Pacific Railroad*, 372 U.S.

248, 83 S.Ct. 690, 9 L.Ed.2d 711 (1963) (per curiam), the Court upheld the "direct negligence"[3] theory of liability, and ruled that a railroad is guilty of negligence if it fails to prevent reasonably foreseeable danger to an employee from intentional or criminal misconduct. *Id.* at 249, 83 S.Ct. 690. Significantly, the "direct negligence" theory does not require proof that the intentional tort was committed in furtherance of the employer's business. *Slaughter v. Atlantic Coast Line Railroad*, 112 U.S.App.D.C. 327, 331 n.7, 302 F.2d 912, 916 n.7 (1962).[4]

The test whether an F.E.L.A. case should be submitted to the jury "is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pacific Railroad*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957). Thus, unless "fairminded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury," the case should be decided by the jury. *Id.* at 510, 77 S.Ct. at 451. Although we recognize the liberality of this test, we agree with the district court that the evidence produced at trial and the inferences to be drawn therefrom, viewed in the light most favorable to the plaintiff, did not make out a case for the jury under either theory of liability. *See Hartel v. Long Island Railroad*, 476 F.2d 462, 464 (2d Cir.), *cert. denied*, 414 U.S. 980, 94 S.Ct. 273, 38 L.Ed.2d 224 (1973).

## III

The evidence concerning the assault by Garnett on Brooks suggests only

---

**2.** This theory was reflected in the following special question for the jury:

Do you find by a fair preponderance of the evidence that Mr. Garnett, an employee of the defendant at the time in question, assaulted the plaintiff while acting in the course of the discharge of his duties and in the furtherance of the work of his employer's business, and that such acts caused, in whole or in part, any injury to the plaintiff?
Joint Appendix at 8.

**3.** *See Sowards v. Chesapeake & O. R. R.*, 580 F.2d 713, 715 (4th Cir. 1978) (per curiam).

**4.** This theory was reflected in the following special question for the jury:

Do you find by a fair preponderance of the evidence that the defendant, Washington Terminal Company, was negligent in its hiring of Mr. Garnett, in failing to maintain a reasonably safe place in which its employees worked, or in failing to warn its employees of the alleged propensities of Mr. Garnett, [and] that any of said negligence caused, in whole or in part, any foreseeable injury to the plaintiff?
Joint Appendix at 8.

that Garnett was motivated by revenge to further his own personal interests. There is no reason to believe he was acting, or supposed he was acting, in furtherance of the defendant's business. Under these circumstances, the plaintiff's case under the respondeat superior theory was not one for the jury. See Euresti v. Washington Terminal Co., 108 U.S.App.D.C. 81, 82, 280 F.2d 629, 630 (1960) (per curiam); see also Sowards v. Chesapeake & Ohio Railway, 580 F.2d 713, 715 (4th Cir. 1978).[5]

■ The doctrine of Lillie v. Thompson, 332 U.S. 459, 462, 68 S.Ct. 140, 92 L.Ed. 73 (1947) (per curiam), and Harrison v. Missouri Pacific Railroad, 372 U.S. at 249, 83 S.Ct. 690, requires proof of reasonable foreseeability of danger from intentional or criminal misconduct before liability is imposed on an employer under the F.E.L.A. for its "direct negligence." See also Atlantic Coast Line Railroad v. Southwell, 275 U.S. 64, 65, 48 S.Ct. 25, 72 L.Ed. 157 (1927). The F.E.L.A. does not make a railroad company an insurer of its employees' safety. See Inman v. Baltimore & Ohio Railroad, 361 U.S. 138, 140, 80 S.Ct. 242, 4 L.Ed. 198 (1959).

■ There was no evidence presented in this case from which a jury could infer that the defendant had ignored the consequences of a foreseeable risk of injury such as that suffered by Brooks. Specifically, no evidence was presented from which a reasonable person could conclude that the terminal company knew or should have known, when it hired Garnett or thereafter, that he was a person with a propensity for violence. No evidence was produced to show that the terminal company knew of Garnett's arrest record when it hired him, or that the company's procedures for screening applicants for employment were below the required standard of care. Even if the terminal company did know of Garnett's prior arrests, without convictions, for petty larceny and possession of drugs, it is by no means clear that such knowledge would justify an inference of reasonable foreseeability of violent propensities. Moreover, it cannot be said that Garnett's absence from his duties during the hours preceding the assault foreshadowed what was to come.[6]

■ Plaintiff contends that negligence of the defendant could be found from a failure of the company to enforce its rule against use and possession of drugs. We cannot agree. Before failure to enforce a rule could give rise to liability, there must be evidence, as in the case cited by plaintiff, of prior disregard of the rule, which would "warrant[ ] a finding of the defendant's

**5.** We are aware that questions have been raised concerning the scope of respondeat superior under the Federal Employers' Liability Act. See Baker v. Baltimore & O. R. R., 502 F.2d 638, 641 (6th Cir. 1974); Ira S. Bushey, Inc. v. United States, 398 F.2d 167, 171–72 & n.8 (2d Cir. 1968); Copeland v. St. Louis-S. F. Ry., 291 F.2d 119, 122–24 (10th Cir. 1961) (Murrah, C. J., dissenting). We need not address these cases because the plaintiff acquiesced in the district court's formulation of the doctrine of respondeat superior. See note 2 supra; Brief for Appellant at 38–39. On appeal, the plaintiff alleges only that the requirement that an intentional tort be committed in furtherance of the employer's business is not a part of the "direct negligence" test, which relies on foreseeability of intentional conduct. Brief for Appellant at 22–23. We agree. See text supra at —— of 193 U.S.App.D.C., at 1288 of 593 F.2d. Although the case of Davis v. Green, 260 U.S. 349, 43 S.Ct. 123, 67 L.Ed. 299 (1922), written by Mr. Justice Holmes, engendered some controversy concerning this issue, we believe Davis was based on respondeat superior rather than "direct negligence" principles. See Atlantic Coast Line R. R. v. Southwell, 275 U.S. 64, 65, 48 S.Ct. 25, 72 L.Ed. 157 (1927) (Holmes, J.).

**6.** We recognize that in certain circumstances a railroad company may have a duty to search promptly for an absent employee in order "to save him from his probable peril." Anderson v. Atchison, T. & S. F. Ry., 333 U.S. 821, 823, 68 S.Ct. 854, 855, 92 L.Ed. 1108 (1948) (per curiam). Plaintiff argues that the assault by Garnett would not have occurred if the assistant car foreman, Deal, had searched for and located Garnett when he failed to appear for the 1:00 a. m. meeting. Thus, plaintiff contends, the defendant terminal company is liable for the injury resulting from the assault. We cannot agree. The defendant would be liable only for reasonably foreseeable dangers created by Garnett's absence. See text supra at —— of 193 U.S.App.D.C., at 1288 of 593 F.2d. It cannot be said that an employee's absence from duties creates a reasonable foreseeability of violent conduct by that employee.

knowledge of the practice and of its negligence in the performance of its duty to enforce the rule." *Descoteau v. Boston & Maine Railroad*, 101 N.H. 271, 274, 140 A.2d 579, 583 (1958). There was no such evidence in this case.

For the preceding reasons, we conclude that the district court did not err in directing a verdict for the defendant.

*Affirmed.*