Michael McMILLAN, Appellant,

v.

The NATIONAL RAILROAD PASSEN-
GER CORPORATION, Appellee.

No. 92–CV–638.

District of Columbia Court of Appeals.

Argued Oct. 12, 1993.
Decided Sept. 29, 1994.

H. Vincent McKnight, Jr., Washington, DC, for appellant.

Joseph S. Crociata, with whom Martha Ann Knutson, Washington, DC, was on the brief, for appellee.

Before FERREN, SCHWELB, and SULLIVAN, Associate Judges.

SULLIVAN, Associate Judge:

Appellant, Michael McMillan ("McMillan"), brought suit against his employer, the National Railroad Passenger Corporation ("Amtrak"), appellee, under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60 (1988). Under FELA, a common carrier by railroad engaged in interstate commerce is

liable in damages to any person suffering injury while he is employed by such carrier

in such commerce ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.

*Id.* at 51.

The complaint alleged that McMillan sustained medical expenses and severe emotional distress because of harassment by fellow employees which his supervisors failed to stop. As a result of this harassment, McMillan alleged that Amtrak breached its duty to provide him with a safe place to work, and he claimed damages for negligent infliction of emotional distress. Moreover, McMillan also sought recovery under a direct negligence theory by alleging that the railroad was negligent in failing to prevent a reasonably foreseeable physical injury he sustained as a result of a co-employee's intentional or criminal misconduct.

At the close of the plaintiff's case, Amtrak moved for a directed verdict, arguing that McMillan had not presented any evidence that Amtrak's negligence caused him physical injury or placed him in a zone of danger which resulted in his emotional distress. The trial court agreed and granted Amtrak's motion for directed verdict. On appeal, McMillan contends that the trial court failed to apply the appropriate standard for a claim of emotional distress under FELA and failed to take the facts presented at trial in the light most favorable to him under the direct negligence theory, thereby erroneously granting the directed verdict. For the following reasons, we affirm in part and reverse and remand in part.

## I.

In April of 1987, McMillan's position as a welder in one of Amtrak's maintenance programs was eliminated. He exercised his right, pursuant to his union contract, to displace a less senior employee, Al Phillips ("Phillips"), and assumed Phillips' job as blacksmith. This action is commonly referred to as "bumping." After Phillips was "bumped" down to a regular carman's position, McMillan began experiencing difficulties with his immediate supervisors, Larry Hefner and Vincent Tana, both of whom had supervised Phillips.

McMillan testified at trial that because he had displaced Phillips, who was well-liked in the blacksmith shop, he was harassed by his supervisors and co-workers. McMillan testified that his supervisors assigned him work outside of his duties as blacksmith and that he was prevented from performing his duties because his co-workers, in particular Phillips and Sam Morris, were hanging around the blacksmith area and harassing him. McMillan claimed that he reported this harassment to Hefner and Tana, but that neither supervisor took action to remedy the situation.

McMillan's testimony focused on three particular incidents of harassment which he claimed placed him in a "zone of danger" for purposes of recovery under a theory of negligent infliction of emotional distress. The first incident occurred on August 7, 1987. McMillan testified that on that date, Phillips suddenly punched him in the left shoulder for no apparent reason. McMillan claimed that prior to this particular incident he had seen Phillips "punch quite a few people" in front of Hefner and Tana, but to his knowledge, Phillips had not been reprimanded.[1]

The second and third incidents occurred on August 11, 1987. On that date, McMillan claimed that while he was welding, a co-worker came up behind him, lit a blow torch and placed it to the seat of his welding pants. Neither McMillan nor his welding pants sustained burns. Later that same day, again, while McMillan was welding, Morris hit a steel table on which McMillan was working with a twenty-four pound hammer, using sufficient force to make the welding table bounce off the floor. Though shaken up, McMillan sustained no physical injury from the incident.

McMillan reported all three incidents on August 11, 1987 to a manager, Mr. Driggers, who issued Phillips a formal, written reprimand and reprimanded McMillan for delaying his reporting of the punching incident.

---

1. This punching incident is also the basis of McMillan's claim for recovery under a direct negligence theory. See Part V, *infra.*

That same day, McMillan was sent to the company physician, who referred him to McMillan's private physician for treatment of his shoulder; McMillan did not seek any care from his orthopedist until several months after the incident.[2]

McMillan testified at trial that because of the harassment of his co-workers he experienced sleeplessness, an inability to perform sexually, and anxiety. Dr. Roth, a psychiatrist whom McMillan began seeing as a result of his difficulties at work and at home, testified that McMillan was suffering from generalized anxiety disorder engendered in part by job-related stress. Essentially, McMillan claimed that these physical and emotional injuries were a foreseeable result of unsafe working conditions created by his supervisors' failure to respond to his complaints of harassment.

## II.

■■■■ It is well established that a railroad has a duty to use reasonable care in providing its employees with a safe place to work. *Bailey v. Central Vermont Ry.*, 319 U.S. 350, 352–53, 63 S.Ct. 1062, 1063–64, 87 L.Ed. 1444 (1943). Breaches of that duty resulting in injury or death are cognizable under FELA. *Fogg v. National R.R. Passenger Corp.*, 585 A.2d 786, 789 (D.C.1991). Though FELA has been construed liberally in order to effectuate Congress' goal of compensating railroad employees for injuries sustained in the course of their employment, it is not a workers' compensation statute. Thus, FELA jurisprudence, developed from the common law, determines whether, and to what extent, new categories of claims should be cognizable under the statute. *Consolidated Rail Corp. v. Gottshall*, — U.S. —, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). Here, McMillan sought to recover damages under FELA on (1) a theory of negligent infliction of emotional distress based on harassment by his co-workers and supervisors, and (2) a direct negligence theory based on an assault and battery by a co-worker. In reviewing the trial court's directed verdict, we will first

address appellant's claim for negligent infliction of emotional distress and then address his direct negligence claim.

## III.

■■■ Federal law controls actions under FELA in local as well as federal courts. *Dice v. Akron, Canton & Youngstown R.R.*, 342 U.S. 359, 361, 72 S.Ct. 312, 314, 96 L.Ed. 398 (1952). "It is firmly established that questions of sufficiency of evidence for the jury in cases arising under the act in state courts are to be determined by federal rules." Annotation, *Applicability of state practice and procedure in Federal Employers' Liability Act actions brought in state courts*, 79 A.L.R.2d 553, 562 (1961) (footnote omitted). *See also Adair v. Northern Pac. Ry.*, 392 P.2d 830, 831 (Wash.1964) ("[t]he federal interest under the Act extends to the determination of the minimum quantum of evidence the plaintiff must adduce to prove a prima facie case"); *Overstreet v. Atlantic Coast Line R.R.*, 152 So.2d 188, 189 (Fla. Dist.Ct.App.1963) ("[f]ederal decisions govern the question of the sufficiency of the evidence"). Thus, federal law controls our review of the trial court's grant of the directed verdict in favor of Amtrak.

■■■ "Under [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pac. R.R.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957) (footnote omitted). The railroad's negligence need not be the sole cause of the plaintiff's injury. *Rogers* has been consistently interpreted as requiring FELA cases to be sent to a jury if employer negligence constituted any cause of the plaintiff's injury or death. *See Fogg, supra*, 585 A.2d at 790 (adopting *Rogers* causation standard for jury trial).

■■■ Though the slightest evidence of causation is sufficient for a FELA case to be sent to the jury, it is required, nevertheless,

---

**2.** Neither the testimony of McMillan's orthopedist nor any medical records were presented as evidence to support McMillan's claim that he had

suffered physical injury from the punch thrown by Phillips.

that employer *negligence* be demonstrated in a prima facie case under FELA. The Supreme Court has held that "[t]o recover under the [Federal Employers Liability] Act, it [is] incumbent upon [the employee] to prove negligence of [the employer railroad] which caused the fatal accident [or injury]." *Moore v. Chesapeake & Ohio Ry.*, 340 U.S. 573, 575, 71 S.Ct. 428, 429, 95 L.Ed. 547 (1951) (citation omitted). "Liability arises from negligence not from injury under [FELA]." *Brady v. Southern Ry.*, 320 U.S. 476, 484, 64 S.Ct. 232, 236, 88 L.Ed. 239 (1943). "The basis of the [railroad's] liability is [its] negligence, not the fact that injuries occur." *Ellis v. Union Pacific R.R.*, 329 U.S. 649, 653, 67 S.Ct. 598, 600, 91 L.Ed. 572 (1947).

What constitutes negligence under FELA is a federal question that turns on principles of common law. The Supreme Court in *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), held that "negligence, within the meaning of the Federal Employers' Liability Act, attache[s] if [the railroad] 'knew, or by the exercise of due care should have known,' that prevalent standards of conduct were inadequate to protect petitioner and similarly situated employees." *Urie, supra*, 337 U.S. at 178, 69 S.Ct. at 1028. Negligence is the "failure of [a railroad's] agents to do what a 'reasonable and prudent man would ordinarily have done under the circumstances of the situation.'" *Anderson v. Atchison, T. & S.F. Ry.*, 333 U.S. 821, 823, 68 S.Ct. 854, 855, 92 L.Ed. 1108 (1948) (citing *Tiller v. Atlantic Coast Line R. Co.*, 318 U.S. 54, 67, 63 S.Ct. 444, 451, 87 L.Ed. 610 (1943)). "[I]n order [to] recover under FELA, a plaintiff must establish ... that the employer could have foreseen that injury to the employee was likely or reasonably probable, and failed to take reasonable steps to prevent

injury to its employees." *Dale v. Baltimore & Ohio R.R.*, 520 Pa. 96, 552 A.2d 1037, 1038 (1989) (citation omitted). An employer's antecedent negligence must first be established before an inquiry into causation is even warranted. *See Gallick v. Baltimore & Ohio R.R.*, 372 U.S. 108, 116, 83 S.Ct. 659, 664, 9 L.Ed.2d 618 (1963). Thus, in presenting his prima facie case, McMillan had to establish that Amtrak was negligent in order to recover under either theory of liability.

## IV.

FELA is founded on common-law concepts of negligence and injury, and therefore, common-law principles play a significant role in determining whether a cause of action for negligent infliction of emotional distress under FELA exists. *Consolidated Rail Corp., supra*, —— U.S. at ——, 114 S.Ct. at 2404; *see also Atchison, T. & S.F. Ry. v. Buell*, 480 U.S. 557, 568, 107 S.Ct. 1410, 1417, 94 L.Ed.2d 563 (1987) ("FELA jurisprudence gleans guidance from common law developments"). These common-law principles, as applied and established in the federal courts, constitute federal law. *See Urie, supra*, 337 U.S. at 174, 69 S.Ct. at 1027 ("[w]hat constitutes negligence for the statute's purposes is a federal question").

The United States District Court for the District of Columbia, in an unpublished opinion, *Louann Rose v. National R.R. Passenger Corp.*, Civil Action No. 88–0955 (D.C.Cir. September 27, 1989), recognized a cause of action under FELA for negligent infliction of emotional distress and held that the District of Columbia's then prevailing common-law rule of negligent infliction of emotional distress [3] governed claims for damages of emotional distress un-

---

3. Prior to the en banc decision in *Williams v. Baker*, 572 A.2d 1062 (D.C.1990) (en banc), the established rule in this jurisdiction, set forth in *Williams v. Baker*, 540 A.2d 449 (D.C.1988), *vacated*, 572 A.2d 1062 (D.C.1990) (en banc), was no recovery for negligently caused emotional distress unless the negligence caused contemporaneous and direct physical injury.

However, the doctrine regarding the common law action for negligent infliction of emotional distress has changed dramatically since the original *Williams* decision cited in *Louann Rose, su-*

*pra*. The District of Columbia now follows the zone of danger test in determining whether a cause of action for negligent infliction of emotional distress exists. *Williams, supra*, 572 A.2d at 1073 ("We discard the requirement that, to be compensable, mental or emotional harm must be caused by physical injury to the direct victim of a defendant's negligence."). Plaintiffs in the zone of danger may recover absent physical injury if their emotional injuries are "serious and verifiable." *Jones v. Howard University*, 589 A.2d 419, 424 (D.C.1991).

der FELA.[4] This position was recently affirmed by the Supreme Court when it held that, "as part of its 'duty to use reasonable care in furnishing its employees with a safe place to work,' a railroad has a duty under FELA to avoid subjecting its workers to negligently inflicted emotional injury." *Consolidated Rail Corp., supra*, —— U.S. at ——, 114 S.Ct. at 2408 (citation omitted).[5]

■ Following the District of Columbia and thirteen other jurisdictions, the Supreme Court ruled that the "zone of danger test best reconciles the concerns of the common law with the principles underlying our FELA jurisprudence." *Consolidated Rail Corp., supra*, —— U.S. at ——, 114 S.Ct. at 2410. Thus, the Court "adopt[ed] the common-law zone of danger test as delimiting the proper scope of an employer's duty under FELA to avoid subjecting its employees to negligently inflicted emotional injury." *Id.* As a result of the Court's ruling, which is binding on this court,[6] "[r]ailroad employees ... will be able to recover for injuries—physical and emotional—caused by the negligent conduct of their employers that threatens them *imminently* with physical impact." *Id.* at ——, 114 S.Ct. at 2411. (Emphasis added.)

■ "[A]n emotional injury constitutes 'injury' resulting from the employer's 'negligence' for purposes of FELA only if it would be compensable under the terms of the zone of danger test." *Id.* at ——, 114 S.Ct. at 2410. McMillan has failed to establish a prima facie case of negligent infliction of emotional distress because he has failed to demonstrate that he was "in the zone of physical danger and was caused by defendant's negligence to fear for his ... own safety." *Williams, supra*, 572 A.2d at 1067. Common-law principles provide that in order to recover for negligent infliction of emotional distress a plaintiff must prove that

> [T]he defendant, by his negligence, has endangered the plaintiff's own safety and threatened him with bodily harm, so that the defendant is in breach of an original duty to the plaintiff to exercise care for his protection.

*Id.* at 1069 (quoting RESTATEMENT (SECOND) OF TORTS § 436, comment f (1965)).

McMillan testified that co-workers were hanging around the blacksmith shop, making it messy, and he described the three incidents involving the torch, hammer and punch

---

**4.** At oral argument, counsel for appellants urged this court not to apply the common law of the District of Columbia in determining whether appellant had established a prima facie case of negligent infliction of emotional distress under the FELA. Counsel urged this court to look to the various federal circuits in determining whether appellant's case should have survived Amtrak's motion for a directed verdict. Because appellant urged the trial court and this court in its original brief to follow the law of the District of Columbia regarding the common law tort of emotional distress, appellant's position at oral argument constituted a new issue on appeal which this court will not consider. *See Georgetown College v. Diavatis*, 470 A.2d 1248, 1251 (D.C.1983) ("It is a basic precept of appellate procedure that issues not raised in the trial court will not ordinarily be considered by an appellate court.").

**5.** This holding by the Supreme Court resolves the conflicts among the lower federal courts concerning whether a cause of action for negligent infliction of emotional distress is cognizable under FELA and the elements necessary to support such a cause of action. At the time of oral argument, the circuit courts were split on the issue. *See Ray v. Consolidated Rail Corp.*, 938 F.2d 704 (7th Cir.1991) (FELA does not create a cause of action for emotional injuries absent ac-

tual or threatened physical impact), *cert. denied*, —— U.S. ——, 112 S.Ct. 914, 116 L.Ed.2d 813 (1992); *Taylor v. Burlington N. R.R.*, 787 F.2d 1309 (9th Cir.1986) (holding that purely emotional injuries are recoverable under FELA, but not determining the circumstances in which recovery would be permitted); *Plaisance v. Texaco, Inc.*, 966 F.2d 166 (5th Cir.) (failing to decide whether or under what circumstances to permit recovery of damages for purely emotional injuries), *cert. denied*, —— U.S. ——, 113 S.Ct. 604, 121 L.Ed.2d 540 (1992); *Carlisle v. Consolidated Rail Corp.*, 990 F.2d 90 (3d Cir.1993) (affirming the grant of damages under FELA for negligent infliction of emotional distress for work stress related injuries), *rev'd, Consolidated Rail Corp. v. Gottshall*, —— U.S. ——, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994).

**6.** "Federal decisional law formulating and applying the concept [of what constitutes negligence] governs." *Urie, supra*, 337 U.S. at 174, 69 S.Ct. at 1027 (footnote omitted); *see also Railway Express Agency, Inc. v. Marchant Calculating Mach. Co.*, 52 A.2d 277, 279–80 (D.C.Mun.1947) (court must look to Supreme Court cases interpreting the Carmack Amendment to determine liability of carrier).

by Phillips. He also testified that he feared that "sooner or later all of the horseplay would cause a severe accident." The remainder of the testimony consisted of describing his work assignments which he claimed were beyond the scope of his duties as blacksmith. Though McMillan's experiences may be characterized as both annoying and frustrating, his assertions, as a matter of law, do not constitute being in a zone of physical danger. This court in *Jones v. Howard University, supra,* 589 A.2d at 423, explained that "[t]he threat of injury from these sources must have been *more than minimal or negligible.*" (Emphasis added.)

McMillan has offered no evidence that his physical safety was imminently endangered by his co-workers' alleged harassment and horseplay in the blacksmith shop. Rather, his testimony recounted a series of conflicts with his supervisors and horseplay among co-workers. In our view, he failed to demonstrate that the threat of injury claimed was more than minimal or negligible. *See Villamil v. Elmhurst Memorial Hosp.,* 175 Ill. App.3d 668, 125 Ill.Dec. 105, 106, 529 N.E.2d 1181, 1182 (1988) (zone of physical danger rule requires that a plaintiff show that he was in *reasonable fear* for his own safety); *Vaillancourt v. Medical Ctr. Hosp. of Vt.,* 139 Vt. 138, 425 A.2d 92, 95 (1980) (zone of danger requires plaintiff to be subject to a reasonable fear of *immediate personal injury* ). McMillan testified that he complained to his supervisors on numerous occasions about co-workers hanging around his work area, leaving materials and trash there. He described numerous instances from 1987–90 in which he was assigned work he believed was outside of the scope of his duties. McMillan did not, however, present any evidence that the disputed job assignments or the presence of the other workers in his job area endangered his physical safety, thus placing him in a zone of danger.

McMillan did testify, however, that his supervisors, Hefner and Tana, were aware of his co-worker's, Phillips', propensity to punch other workers. McMillan testified that he had seen Phillips punch "quite a few people," prior to the incident in which Phillips punched McMillan in the shoulder, and thus, he argues, by having him work with Phillips, Amtrak negligently placed him in a zone of danger. McMillan did not state, however, when these incidents occurred, to whom, with what frequency, or under what circumstances. Thus, there was no evidence establishing that McMillan was subject to a reasonable fear of *immediate personal injury.* His own testimony that "sooner or later all of the horseplay would cause a severe accident" did not suggest that he was in immediate physical danger.[7] McMillan's testimony may be contrasted to the testimony and other evidence in *District of Columbia v. Indiana Evans,* 644 A.2d 1008, 1019 (D.C.1994), where this court ruled that a reasonable factfinder could have found that police officers negligently inflicted emotional distress on Evans while she was in the zone of danger in view of the following evidence:

> Ms. Evans testified that she had feared for her safety when the officers fired their weapons. She also testified that she had suffered physical and emotional harms as the result of witnessing the killing of her son. Of critical importance, there was additional testimony that a firefighter pushed Ms. Evans to the ground in order to protect her from possible stray bullets.

*Id.* at 1019.

Unlike *Indiana Evans,* the threat of injury in McMillan's case was not immediate. Rather, any threat of injury was both speculative and remote and thus, did not establish McMillan's presence in a zone of danger due to Amtrak's negligence. Evans presented testimony that she was almost hit by a stray bullet. Clearly, she was in the zone of *immediate* physical danger. McMillan testified that during a three-year period, he had witnessed Phillips punch co-workers, and McMillan claimed that his immediate supervisors were aware of these punching inci-

---

7. For example, emotional distress caused by McMillan's observing Phillips punch a co-worker a year before he was punched would not constitute a reasonable fear of immediate personal injury now. Following McMillan's rationale, any worker who was present in the shop and had observed Phillips punch a co-worker at some time would have a claim under FELA for negligent infliction of emotional distress.

dents. However, without testimony detailing the circumstances under which these alleged incidents occurred, the frequency of these incidents, or the dates of occurrence, there was no suggestion that McMillan was subject to a reasonable fear of *immediate* physical danger. Considering the evidence produced at trial and drawing inferences from that evidence in the light most favorable to McMillan, he has nonetheless failed to establish a prima facie case that Amtrak's negligence threatened him *imminently* with physical impact. Thus, appellant was not within a zone of physical danger created by Amtrak, and the trial court's grant of directed verdict for appellee on the claim for negligent infliction of emotional distress was proper.

## V.

McMillan also claimed, under a direct negligence theory, that Amtrak acted negligently by failing to take steps to prevent the physical harassment directed at him. McMillan alleged that he sustained physical injury when punched in his left shoulder by Phillips on August 7, 1987. He argued that his supervisors, Hefner and Tana, had notice of Phillips' violent propensity, and therefore Amtrak knew or should have known of Phillips' abusive behavior prior to the August 7th punching. According to McMillan, Amtrak was negligent by requiring him to work in the vicinity of Phillips, thus exposing him to the assault.

The Supreme Court has upheld recovery under a direct negligence theory given proof that the employer failed to prevent reasonably foreseeable danger to an employee from intentional or criminal misconduct. *Harrison v. Missouri Pac. R.R.*, 372 U.S. 248, 249, 83 S.Ct. 690, 690, 9 L.Ed.2d 711 (1963). The rationale of *Harrison* was followed in *Brooks v. Washington Terminal Co.*, 193 U.S.App. D.C. 131, 593 F.2d 1285, *cert. denied,* 442 U.S. 910, 99 S.Ct. 2823, 61 L.Ed.2d 275 (1979). *Brooks* held that FELA provides recovery for damages resulting from an assault committed by an employee in the course of the discharge of his duties and in furtherance of the work of his employer and for damages resulting from an employer's failure to prevent a reasonably foreseeable danger to an employee from a co-employee's intentional or criminal misconduct. *Brooks* requires that the railroad knew or should have known that Phillips "was a person with a propensity for violence." *Brooks, supra,* 193 U.S.App.D.C. at 135, 593 F.2d at 1289.

Brooks, a railroad car foreman for the Washington Terminal Company, was assaulted by Darryl Garnett, an equipment service cleaner, who had been employed by Washington Terminal for five months. After the attack, Garnett was taken to the District of Columbia Superior Court and charged with assault. While Garnett was being charged, a Washington Terminal Company policeman checked Garnett's record and found that he had been arrested previously for petty larceny and possession of drugs. Brooks brought an action against Washington Terminal under FELA on both a respondeat superior theory[8] and a direct negligence theory. Under the direct negligence theory, Brooks argued that the railroad knew or should have known of Garnett's violent propensities. However, at trial, Washington Terminal introduced evidence that Garnett's police clearance card, obtained before being employed by the railroad, stated that Garnett had no police record, and that Garnett's employment application stated that he had never taken drugs. The court ruled that even if the railroad had known prior to the assault of Brooks that his co-employee had been arrested for larceny and drug possession, it was "by no means clear that such knowledge would justify an inference of reasonable foreseeability [on the part of the railroad] of violent propensities" of the employee. *Id.*

Here, McMillan testified that his supervisors, Hefner and Tana, had witnessed Phillips punch other workers before McMillan was punched. McMillan testified that to his knowledge, Hefner and Tana did not take any action to report or reprimand Phillips for punching co-workers. Amtrak did not produce any evidence to rebut McMillan's testimony that agents of Amtrak had notice of Phillips' violent behavior before he punched McMillan on August 7th. Thus, there was

---

**8.** McMillan did not seek to recover against Amtrak under a respondeat superior theory.

evidence presented in this case from which a jury could infer that Amtrak had ignored the consequences of a foreseeable risk of injury such as that suffered by McMillan.[9]

The trial court erred in granting Amtrak a directed verdict on McMillan's direct negligence claim.

> Under ... [FELA,] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest,* in producing the injury or death from which damages are sought.... Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death.

*Fogg, supra,* 585 A.2d at 790–91 (citation omitted) (emphasis added). Given McMillan's unrefuted testimony, reasonable jurors could differ as to whether or not Amtrak agents acted as reasonable and prudent men would ordinarily have acted under the circumstances of the situation. "Congress vested the power of decision in [FELA] actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot

honestly differ whether fault of the employer played any part in the employee's injury." *Rogers, supra,* 352 U.S. at 510, 77 S.Ct. at 450–451 (footnote omitted). Thus, in this case, on the direct negligence theory of recovery, it was for the jury, not the trial court to determine Amtrak's liability or lack thereof, and the directed verdict should have been denied.

## VI.

Accordingly, we affirm the trial court's judgment granting Amtrak a directed verdict on appellant's claim of damages for negligent infliction of emotional distress. The trial court's judgment granting Amtrak a directed verdict on the direct negligence theory, however, is reversed, and the case is remanded for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*

---

9. We note that the Supreme Court explicitly rejected foreseeability as a meaningful limitation on liability for recovery for negligent infliction of emotional distress under FELA. *See Consolidated Rail Corp., supra,* —— U.S. at ——, 114 S.Ct. at 2409. The standard for recovery under a theory of negligent infliction of emotional distress is more strict than under a theory of direct negligence because of "the potential for a flood of trivial suits, the possibility of fraudulent claims that are difficult for judges and juries to detect, and the specter of unlimited and unpredictable liability." *Id.* at ——, 114 S.Ct. at 2411.