**Mechele VINSON, Appellant**

v.

**Sidney L. TAYLOR, et al.**

**No. 80–2369.**

United States Court of Appeals,
District of Columbia Circuit.

May 14, 1985.

Before ROBINSON, Chief Judge, and WRIGHT, TAMM, WALD, MIKVA, EDWARDS, GINSBURG, BORK, SCALIA and STARR, Circuit Judges.

ON APPELLEES' SUGGESTION FOR
REHEARING EN BANC

*PER CURIAM.*

Appellees' suggestion for rehearing *en banc* has been transmitted to the full Court. A majority of the judges of the Court in regular active service have not voted in favor thereof. Upon consideration of the foregoing, it is

ORDERED, by the Court *en banc,* that the suggestion is denied.

A dissenting opinion filed by Circuit Judge BORK is attached and is joined by Circuit Judges SCALIA and STARR.

BORK, Circuit Judge, with whom Circuit Judges SCALIA and STARR join, dissenting from the denial of rehearing en banc:

This case should be reheard en banc. It involves important issues of antidiscrimination law, at least two of which are wrongly decided. The panel's resolutions of the various issues before it, taken in combination, produce an unacceptable result. According to the panel opinion, when an employee charges sexual harassment in the workplace, the supervisor charged may not prove that the sexual behavior, far from constituting harassment, was voluntarily engaged in by the other person, nor may the supervisor show that the charging person's conduct was in fact a solicitation of sexual advances. These rulings seem plainly wrong. By depriving the charged person of any defenses, they mean that sexual dalliance, however voluntarily engaged in, becomes harassment whenever an employee sees fit, after the fact, so to characterize it.

The panel opinion explicitly states that a plaintiff's voluntariness in participating in a sexual relationship with her supervisor "can have no bearing on the pertinent inquiry" in a sexual harassment suit brought under Title VII. *Vinson v. Taylor,* 753 F.2d 141, 146 (D.C.Cir.1985). The panel finds legally insignificant the following factual finding by the district court:

> if [Vinson] and Taylor did engage in an intimate or sexual relationship during the time of [Vinson's] employment with Capital, that relationship was a voluntary one by [Vinson] having nothing to do with her continued employment at Capital or her advancement or promotions at that institution.

*Id.* at 145 (footnote omitted). This finding may have been irrelevant to environmental, as opposed to quid pro quo, harassment because it speaks of continued employment and advancement. But the panel did not rest on that distinction and rejected voluntariness as a defense in any kind of case. The panel's reasoning on this point is entirely circular. The opinion states that to allow proof of voluntariness on the part of a woman employee would expose her to what the panel sees fit to characterize as a "hideous quadrilemma"—the victim must acquiesce in the harassment, oppose it, resign, or yield and lose all hope of legal redress. *Id.* at 146. Passing the point that yielding and acquiescing would seem to be the same thing, the argument succeeds only because the defendant is denied the right to prove that the "victim" is not that but a willing participant. The rules of evidence are rigged so that dalliance is automatically harassment because no one is allowed to deny it.

The harmfulness of the panel decision is augmented by additional rulings on what evidence is to be admissible in Title VII sexual harassment cases. On the one hand, the panel holds that plaintiffs must be allowed to introduce evidence of their

supervisor's behavior toward other employees in an effort to establish a pattern or practice of sexual harassment. 753 F.2d at 146. On the other hand, the panel also holds that a supervisor must not be allowed to introduce similar evidence of an employee's dress or behavior in an effort to prove that any sexual advances were solicited or welcomed. *Id.* at 146 n. 36. In this case, evidence was introduced suggesting that the plaintiff wore provocative clothing, suffered from bizarre sexual fantasies, and often volunteered intimate details of her sex life to other employees at the bank. While hardly determinative, this evidence is relevant to the question of whether any sexual advances by her supervisor were solicited or voluntarily engaged in. Obviously, such evidence must be evaluated critically and in the light of all the other evidence in the case, but it is astonishing that it should be held inadmissible.[1] Added to the elimination of any voluntariness defense, these rulings make certain that to be charged is to be guilty.

But it is not the supervisor alone who is deprived of essential defenses. The panel decision makes the employer vicariously liable for the acts of the supervisor even though those acts were wholly unknown to the employer and were directly contrary to his instructions.[2] Of course, the employer is also prohibited from demonstrating that the alleged harassment was instead voluntary participation or that advances made were solicited. The result is that the employer is virtually converted into an insurer that all relationships between supervisors and employees are entirely asexual. Though the employer has no way of preventing sexual relationships, he is defenseless and must pay if they occur and are then claimed to be harassment.[3]

The Supreme Court has never addressed the question of an employer's vicarious liability under Title VII. I would, however, not suggest that we sit en banc to decide that issue were it not clear that the evidentiary rulings already discussed should be reconsidered en banc. That being so, we ought to take up the difficult and important question of an employer's vicarious liability under Title VII for conduct he knows nothing of and has done all he reasonably can to prevent. In doing this, we cannot necessarily import wholesale notions of vicarious liability which are evolving in lower court Title VII cases involving racial discrimination. We have previously recognized that various Title VII doctrines may require some modification before they can be applied in sexual harassment cases.[4]

1. The panel cited no evidentiary rules or authorities in defense of its statement that this evidence should be suppressed. The sole reason given for excluding the evidence was that "under *Bundy* [*v. Jackson,* 641 F.2d 934 (D.C.Cir. 1981) ], a woman does not waive her Title VII rights by her sartorial or whimsical proclivities." 753 F.2d at 146 n. 36. I am not aware of anything in Title VII or the Federal Rules of Evidence that authorizes a court to suppress evidence that may be relevant to the presence of discriminatory intent. The panel has thus failed to perform the analysis required before relevant evidence may be excluded.

2. In this case, employer Capital City had an official policy of nondiscrimination. Vinson v. Taylor, 23 Fair Empl.Prac.Cas. (BNA) 37, 43 (findings of fact ¶ 15) (D.D.C.1980). Accordingly, any acts of harassment by supervisor Taylor were unauthorized and against company policy.

3. In this case, the employer could not have done more to avoid liability without actually monitoring or policing his employees' voluntary sexual relationships. Aside from the very outrageous-

ness of such policing, it would be a very high cost way, undoubtedly the highest cost way, of solving the problem. *But cf. Horn v. Duke Homes,* 755 F.2d 599 mem. op. (7th Cir.1985) (Swygert, J.) (holding employer strictly liable in Title VII sexual harassment case in part because "the employer is a more efficient cost avoider than is the injured employee").

4. We recognized in *Bundy v. Jackson,* 641 F.2d 934 (D.C.Cir.1981), for example, that the "literal" *McDonnell-Douglas* test, *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 805, 93 S.Ct. 1817, 1824, 1825, 36 L.Ed.2d 668 (1973), which normally governs Title VII actions does not apply "precisely" to Title VII sexual harassment claims. As we explained in *Bundy,* this is because

the *McDonnell* formula presumes the standard situation where the alleged discrimination is due to the bare fact of the claimant's membership in a disadvantaged group. It therefore ... fails to fit with precision the very unusual, perhaps unique, situation of sexual harassment, where the alleged basis of discrimina-

*Bundy v. Jackson,* 641 F.2d 934, 951 (D.C. Cir.1981). The doctrine of vicarious liability may be one such doctrine since it is extremely unlikely that a supervisor would harass an employee for the purpose of furthering his employer's business. Indeed, supervisors engaging in such harassment (whether or not in violation of an explicit company policy) would ordinarily be aware that their employer disapproved of their actions.

Therefore, whatever the proper rule in cases involving racial discrimination, it would be appropriate for the en banc court to re-examine the vicarious liability issue in the unique context presented by sexual harassment claims.[5] The panel's rule is at odds with traditional practice which was not to hold employers liable at all for their employee's intentional torts involving sexu-

al escapades.[6] In addition, the panel's rule is at odds with, or is at least a substantial extension of, the prior case law in this circuit. The two prior decisions of this court upon which the panel relied were both cases where the employer was fully aware of the acts of sexual harassment perpetrated by its supervisory employees. *Bundy v. Jackson,* 641 F.2d at 943; *Barnes v. Costle,* 561 F.2d 983, 1001 (D.C. Cir.1977) (MacKinnon, J., concurring). Indeed, we qualified our holdings in both cases by indicating that if "a supervisor contravene[s] employer policy without the employer's knowledge and the consequences are rectified when discovered, the employer may be relieved from responsibility under Title VII." *Barnes,* 561 F.2d at 993; *Bundy,* 641 F.2d at 943. Accordingly, the panel in the present case has apparent-

tion is not the employee's gender *per se,* but her refusal to submit to sexual advances which she suffered in large part because of her gender.
641 F.2d at 951 (emphasis in original). Accordingly, it was necessary to modify the *McDonnell* test in *Bundy* so that it would fit the unique situation of the sexual harassment claim.

**5.** The panel opinion relies on several decisions in other circuits which, of course, are not binding on this court. Most of those decisions discuss vicarious liability under Title VII in the somewhat different situation where racial discrimination is at issue. 753 F.2d at 149; *see also* Barnes v. Costle, 561 F.2d 983, 993 n. 71 (D.C.Cir.1977) (collecting cases). I have examined those cases and have concluded that they do not provide us with much guidance. None of the cases cited analyze in detail the precise nature of Title VII vicarious liability and most of them devote only a single conclusory sentence of analysis to the complicated issue. Therefore, it would be appropriate for the en banc court to re-examine carefully the vicarious liability doctrine at least insofar as it applies in sexual harassment cases.

**6.** The panel concedes that its decision could not stand under "[t]raditional principles of respondent superior as they obtain in the field of torts." 753 F.2d at 150. Under those principles an employer is only liable for his employee's intentional torts when their "purpose . . . is wholly or in part to further the master's business." W. Prosser, *Law of Torts* 464 (4th ed. 1971). Intentional torts involving sexual escapades almost never result in employer liability because they are personally motivated. It is

perhaps conceivable but certainly highly unlikely that a supervisor would engage in sexual harassment for the purpose of furthering his employer's business. *See* Significant Development, *New EEOC Guidelines on Discrimination Because of Sex: Employer Liability for Sexual Harassment Under Title VII,* 61 B.U.L.Rev. 535, 539 (1981) (under common law test vicarious Title VII responsibility would be rare).

Notwithstanding the traditional rule, the panel claims that strict vicarious liability is mandated here because that is the position taken by the Equal Employment Opportunity Commission's Guidelines on Discrimination Because of Sex. The panel asserts that these guidelines are "entitled to great deference" since they are "administrative interpretation[s] of the Act by the enforcing agency." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 431, 95 S.Ct. 2362, 2378, 45 L.Ed.2d 280 (1975), *quoting Griggs v. Duke Power Co.,* 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971). Nonetheless, the Supreme Court has recently cautioned us not to defer too enthusiastically to guidelines published by the EEOC. *General Electric Co. v. Gilbert,* 429 U.S. 125, 140–45, 97 S.Ct. 401, 410–12, 50 L.Ed.2d 343 (1976). Such guidelines are entitled to deference only when the underlying reasoning is persuasive. *Id.* at 142, 97 S.Ct. at 411, *quoting Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed.2d 124 (1944). *See also International Bhd. of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (rejecting EEOC guidelines on bona fide seniority systems); *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (rejecting EEOC guidelines on employment selection procedures).

ly gone well beyond *Barnes* and *Bundy* in holding this employer vicariously liable for its supervisor's alleged sexual harassment when the employer was not even made aware of and given the chance to rectify the consequences of the harassment alleged.[7]

For all the foregoing reasons, I would rehear this case en banc.

---

**7.** Perhaps some of the doctrinal difficulty in this area is due to the awkwardness of classifying sexual advances as "discrimination." Harassment is reprehensible, but Title VII was passed to outlaw discriminatory behavior and not simply behavior of which we strongly disapprove. The artificiality of the approach we have taken appears from the decisions in this circuit. It is "discrimination" if a man makes unwanted sexual overtures to a woman, a woman to a man, a man to another man, or a woman to another woman. But this court has twice stated that Title VII does *not* prohibit sexual harassment by a "bisexual superior [because] the insistence upon sexual favors would ... apply to male and female employees alike." *Barnes v. Costle,* 561 F.2d at 990 n. 55; *Bundy v. Jackson,* 641 F.2d at 942 n. 7. Thus, this court holds that only the differentiating libido runs afoul of Title VII, and bisexual harassment, however blatant and however offensive and disturbing, is legally permissible. Had Congress been aiming at sexual harassment, it seems unlikely that a woman would be protected from unwelcome heterosexual or lesbian advances but left unprotected when a bisexual attacks. That bizarre result suggests that Congress was not thinking of individual harassment at all but of discrimination in conditions of employment because of gender. If it is proper to classify harassment as discrimination for Title VII purposes, that decision at least demands adjustments in subsidiary doctrines. *See, e.g., Bundy v. Jackson,* 641 F.2d at 951.