Dale **CHIAPUZIO**, Carla Chiapuzio, Clint Bean, and Christina Vironet, Plaintiffs,

v.

**BLT OPERATING CORPORATION,** Defendant.

No. 92–CV–0277–B.

United States District Court, D. Wyoming.

July 29, 1993.

Kennard Nelson, Michael H. Schilling, Laramie, WY, for plaintiff.

Paul D. Schierer, Laramie, WY, for defendants.

## ORDER DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

The above-entitled matter having come before the Court upon cross-motions for summary judgment, and the Court having reviewed the materials on file herein, having heard argument from the parties, and being fully advised in the premises, FINDS and ORDERS as follows:

### *Background*

Plaintiffs Dale & Carla Chiapuzio, Clint Bean and Christina Vironet were employed by the Wyoming Technical Institute ("WTI"), a trade school owned and operated by and through defendant BLT Operating Corp. ("BLT"), a Delaware corporation.

Plaintiff Dale Chiapuzio was employed as a resident housing manager and worked for a supervisor, one Eddie Bell ("Bell"). Dale and his wife, Carla, resided on the premises of WTI. Plaintiffs Chiapuzio complain that, up until the time Mr. Bell resigned in April 1992, Mr. Bell subjected Dale and Carla to an incessant series of sexually abusive remarks, the majority of which referred to the fact that Bell could do a better job of making love to Carla Chiapuzio than Dale could. Apparently, Mr. Bell's supervisor, one Terry Harrison ("Harrison"), endorsed Bell's sexually abusive behavior toward the Chiapuzios.

The Chiapuzios filed a claim with the Wyoming Fair Employment Commission in April 1992. Immediately thereafter, Terry Harrison told Dale that he risked termination because of his claim. Apparently, from this point on, Dale's supervisors failed to support him when he attempted to properly enforce disciplinary measures against students under his supervision. Dale lost the trust, confidence and respect of his students as a result. Ultimately, Dale Chiapuzio resigned in July 1992 because he believed the conditions of his employment had become intolerable.

Plaintiff Carla Chiapuzio was an admissions clerk at WTI; she also lived on the premises. Mr. Bell subjected Carla to an incessant series of sexually abusive remarks. Apparently, Supervisor Terry Harrison also endorsed Bell's actions in this regard.

Plaintiff Clint Bean began as a residential housing manager at WTI, and eventually was promoted to Assistant Housing Manager. Bell subjected Bean and his wife to a constant series of sexually abusive remarks. Apparently, many of these comments were made in front of other WTI employees. Once, Bell offered Clint Bean's wife a $100 dollars if she would sit on his lap.

Plaintiffs generally allege that Bell and Harrison were good friends and that complaining to Harrison about Bell's harassment would be futile. On February 10, 1992, Clint Bean asked Bell to cease his harassment. On February 13, 1992, Clint Bean was fired.

Plaintiff Christina Vironet was a receptionist at WTI, and was eventually promoted to the position of Assistant Director of Placement at the school. Bell subjected Christina to an incessant series of sexual advances. Christina was pregnant at the time Bell made such advances. Bell's wife was Christina's immediate supervisor. Bell's wife often laughed when she heard Bell verbally abuse Christina, and, therefore, Christina believed complaining would be futile.

The plaintiffs sue the defendant pursuant to Title VII for sexual harassment, and, additionally, for breach of employment contract and retaliatory discharge. The plaintiffs seek exemplary damages due to Bell's egregious sexual harassment of the plaintiffs, and the defendant's reckless indifference to plaintiffs' rights under Title VII.

### *Standard of Review*

"By its very terms, [the Rule 56(c)] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

The trial court decides which facts are material as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510; *see also Carey v. United States Postal Service,* 812 F.2d 621, 623 (10th Cir.1987). Summary judgment may be entered "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Carey,* 812 F.2d at 623. The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Carey,* 812 F.2d at 623. In considering a party's motion for summary judgment, the court must examine all evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.,* 648 F.2d 1272, 1276 n. 1 (10th Cir.1981).

### Discussion

■ Defendant BLT essentially argues that Bell harassed both male and female employees alike and, therefore, he could not have discriminated against the plaintiffs at bar based on gender. This argument is flawed in several respects.

First, in the key case of *Meritor Savings Bank F.S.B. v. Vinson,* the Supreme Court held that Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule and insult. 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). The Court stated that hostile work environment sexual harassment occurs when a supervisor's conduct unreasonably interferes with an individual's work performance, or creates an intimidating, hostile or offensive work environment. *Id.* For such harassment to be actionable, it must be "sufficiently pervasive" to alter the conditions of the victim's employment and create an abusive working environment. *Id.* at 67, 106 S.Ct. at 2405.

Arguably, the *Meritor* Court moved away from a disparate treatment or "but for" analysis of gender harassment, and moved toward the view that gender harassment occurs when unwelcome physical or verbal conduct creates a hostile work environment. *Id.* at 64–7, 106 S.Ct. at 2404–5. Other courts have acknowledged this movement. *See e.g., Daemi v. Church's Fried Chicken, Inc.,* 931 F.2d 1379, 1384–85, 1385 n. 5 (10th Cir.1991) (citing *Hicks v. Gates Rubber Co.,* ("Hicks I") 833 F.2d 1406 (10th Cir.1987) for the proposition that "one of the critical inquiries in a hostile environment claim must be the *environment*"); *Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104, 1109 (9th Cir.1991) (plaintiff must suffer "severe or pervasive and unwelcome verbal or physical harassment" because of gender); *compare, Hicks v. Gates Rubber Co.,* ("Hicks II") 928 F.2d 966, 971 (10th Cir.1991) (plaintiff must show that the harassment would not have occurred "but for" the plaintiff's gender; *and,* the harassment was "sufficiently patterned or pervasive" to comprise an illegal condition of employment). Thus, the defendant's argument appears to run counter to the standard articulated by the Supreme Court.

Second, BLT's argument indirectly raises the specter of the "bisexual harasser." The District of Columbia Circuit has described the bisexual harasser as a supervisor who makes unwanted sexual overtures to both men and women employees. *See e.g., Vinson v. Taylor,* 760 F.2d 1330, 1333 n. 7 (D.C.Cir. 1985); *Bundy v. Jackson,* 641 F.2d 934, 951 (D.C.Cir.1981) (observing that the basis for discrimination for sexual harassment is not the employee's gender *per se* but the fact that the employee refused to submit to sexual advances he or she suffered in large part because of gender). In his dissent from the circuit's denial of rehearing *en banc,* Judge Bork opined in *Vinson* that:

Had Congress been aiming at sexual harassment, it seems unlikely that a woman would be protected from unwelcome

heterosexual or lesbian advances but left unprotected when a bisexual attacks. That bizarre result suggests that Congress was not thinking of individual harassment at all [when it enacted Title VII] but of discrimination in conditions of employment because of gender. If it is proper to classify harassment as discrimination for Title VII purposes, that decision at least demands adjustments in subsidiary doctrines. *See. e.g., Bundy v. Jackson*, 641 F.2d at 951.

760 F.2d at 1333 n. 7.

This Court understands Judge Bork to mean that he did not believe claims of sexual harassment fit comfortably within the purview of Title VII. However, if courts were to entertain harassment claims under Title VII, legal doctrines such as the burden of proof or causation, developed under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), would require adjustments. *See also*, Note, *Sexual Harassment and Title VII—A Better Solution*, 30 B.C.L.Rev. 1071, 1099 (1989) (highlighting the problems associated with characterizing sexual harassment as gender discrimination under Title VII).

Given this background, this Court reasons that the equal harassment of both genders does not escape the purview of Title VII in the instant case. Where a harasser violates both men and women, "it is not unthinkable to argue that each individual who is harassed is being treated badly because of gender." *See* John J. Donahue, *Review Essay: Advo-*

*cacy Versus Analysis in Assessing Employment Discrimination Law*, 44 STAN.L.REV. 1583, 1610–11 (1992); *see also*, Cathleen Marie Mogan (Note), *Current Hostile Environment Sexual Harassment Law: Time to Stop Defendants From Having Their Cake and Eating It Too*, 6 NOTRE DAME J.L. ETHICS & PUB. POL'Y 543, 574 (1992) (arguing that a supervisor's like harassment of employees is not necessarily unprotected harassment under Title VII).

This Court would not so much characterize Bell as a bisexual harasser, but simply as an "equal-opportunity" harasser whose remarks were gender-driven. *See* Ellen Frankel Paul, *Sexual Harassment As Sex Discrimination: A Defective Paradigm*, 8 YALE L. & POL'Y REV. 333, 352 (1990) (*hereinafter* "Defective Paradigm"). Bell's remarks to plaintiff Dale Chiapuzio primarily concerned his wife Carla, though Bell intended to demean and harass Dale as a result. Similarly, Bell's remarks to plaintiff Clint Bean were aimed at Bean's wife, though Bell also intended to harass and intimidate Bean.

The principal flaw in the defendant's argument is that it assumes that if a harasser harasses both genders equally, it necessarily follows that the harasser did not harass the employees "but for" their gender. Indeed, a critical difference between the theoretical bisexual harasser and Bell is that Bell intended to demean and, therefore, harm Dale Chiapuzio and Clint Bean because each was male. *See e.g., Defective Paradigm*, 8 YALE L. & POL'Y REV. at 352.[1] Bell often made his

---

1. Professor Paul writes as follows:

   Indeed, the bisexual supervisor does raise a perplexing doctrinal anomaly. The identical offense is sex discrimination under Title VII when perpetrated by a woman against a man; yet, if a bisexual offender of either sex preys equally upon men and women, he (or she) is beyond the reach of Title VII. The law is supposed to look to acts, whether criminal or tortious, to determine culpability and not to the individual characteristics of the perpetrators: that is precisely what is meant by the rule of law. Yet, if sexual harassment is sexual discrimination under Title VII, why are some perpetrators insulated? A savvy harasser need only note this anomaly and become an equal opportunity harasser.

   Taking the point one step further, it also seems peculiar to call sexual harassment of a

male by a male, or a female by a female, sex discrimination. In these scenarios a male (or a female) is selecting a member of his (or her) own sex (i.e., his or her own group on the group-injury model) for harassment. How can this be discrimination? Discrimination, as this Article has defined it, is harming someone or denying someone a benefit because that person is a member of a group that the discriminator despises. What the harasser is really doing is preferring or selecting some one member of his gender for sexual attention, however unwelcome that attention may be to its object. He certainly does not despise the entire group, nor does he wish to harm its members, since he is a member himself and finds others of the group sexually attractive. Virtually all Title VII suits deal with intergroup discrimination, and not, as here, with complaints within a group. Homosexual sexual harassment—

**1338**

remarks in front of the plaintiffs, their respective spouses and other employees. The remarks typically concerned Bell's sexual prowess and included graphic descriptions of sexual acts Bell desired to perform with various *female* employees—here, Carla Chiapuzio, Clint Bean's wife and Christina Vironet. Bell never harassed male employees concerning sexual acts he desired to perform with them. Thus, the nature of Bell's remarks indicates that he harassed the plaintiffs because of their gender and constitute exactly the type of harassment contemplated to fall within the purview of Title VII. *See e.g., Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir.1982); Christine A. Littleton, *Feminist Jurisprudence: The Difference Method Makes,* 41 STAN.L.REV. 751, 770 (1989) (making the policy argument that "equal-opportunity" gender harassment should be included within the purview of Title VII because, otherwise, employees will not be protected from the most harassing work environments).

Third, if this Court dismissed the instant case because Bell harassed the plaintiffs equally, the plaintiffs subsequently could file individual lawsuits against BLT. In each individual suit, evidence of the general work atmosphere as well as evidence of specific hostility directed toward an individual plaintiff would be admissible. *See e.g., Hicks II,* 928 F.2d 966, 972 (10th Cir.1991). An odd and inefficient result would obtain if the plaintiffs were unable to bring one lawsuit as a group, but could successfully bring individual suits against the defendant. Thus, this Court concludes that if an individual plaintiff could sue BLT and survive summary judgment, then the plaintiffs as a group also should survive.

For the above-mentioned reasons, this Court finds that the plaintiffs have established genuine issues of material fact regarding (1) whether Bell harassed the plaintiffs "but for" their gender; (2) whether Bell's harassment was "sufficiently patterned or pervasive" to comprise an illegal condition of employment, *See Hicks,* 928 F.2d at 971; (3) whether Bell's harassment of the plaintiffs was "unwelcome;" (4) whether Bell's supervisor, Terry Harrison, tolerated and/or encouraged Bell's actions; and, (5) whether the defendant breached its respective employment contracts with the plaintiffs as per certain employee handbook provisions which expressly prohibited gender harassment in the workplace, and provided that a supervisor has an affirmative duty to investigate gender harassment in the workplace.

■ The Court further finds that Bell's actions toward Bean's wife were not irrelevant, as defendant urges, because Bean's wife was not employed by the defendant. The plaintiff's may introduce this evidence because it is relevant as to the general work atmosphere, and relevant as to whether Bell intended to harass and/or harm Bean because of his gender.

---

viewed as in some sense a preference phenomenon in which the harasser prefers, first, his own sex, and then a particular member—raises the larger issue of whether it makes sense to characterize the archetypical case of male to female harassment as discrimination, rather that as a preference, albeit misguided and objectionable.
8 YALE L. & POL'Y REV. at 351–52. (footnotes omitted).