Francine RYCZEK, Plaintiff,

v.

GUEST SERVICES, INC.,
et al., Defendants.

Civ. A. No. 94–1131.

United States District Court,
District of Columbia.

Feb. 27, 1995.

Paula DiMeo Grant, II, John Julian Vecchione, Ross & Hardies, Washington, DC, for plaintiff.

Stephen Bruce Forman, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for defendant Guest Services, Inc.

Fred Saul Sommer, Rockville, MD, for defendant Catherine O'Brien.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Pending before Court are the defendants' motions for summary judgment, as well as the supplemental motion for summary judgment of defendants Guest Services, Inc. ("Guest Services"), Harry Hanson, and Holly Burke.[1] After carefully reviewing all of the parties' submissions and hearing oral argument on these motions on February 10, 1995, the Court finds that the defendants are entitled to summary judgment.

## I. BACKGROUND

In the fall of 1992, the plaintiff was a student at Johnson & Wales University in Providence, Rhode Island. She was pursuing a two-year degree in culinary arts. As part of the academic program at Johnson & Wales, the plaintiff was selected to participate in the Cooperative Education Experience ("CEE") program. Students in the CEE program receive wages and academic credits while working in the culinary arts. While participating in the CEE program, the plaintiff worked for defendant Guest Services in the District of Columbia.

The plaintiff began working for Guest Services on December 1, 1992. On December 3, she began working at the Air and Space Museum. She was selected to work with defendant Chef Catherine O'Brien. The plaintiff claims that defendant O'Brien sexually harassed her. Specifically, the plaintiff claims, *inter alia*, that O'Brien told the plaintiff about her sexual preference for females, inquired about the plaintiff's sexual practices, and made other inappropriate comments;

that O'Brien dipped the plaintiff's finger into a pot of sauce and licked the finger; that O'Brien looked at the plaintiff suggestively and leaned against her; and that O'Brien removed her shirt when she was riding with the plaintiff in an elevator.

In late December, the plaintiff asked for, and received, a transfer to another location, the Foreign Service Club. She did not tell anyone why she had requested the transfer. The plaintiff claims that she had no problems at the new location. However, in January of 1993, she claims that she was told that she would be assigned to work at the Air and Space Museum again. Apparently concerned about the possibility of working with O'Brien again, on February 1, 1993, the plaintiff complained about O'Brien's conduct to defendant Holly Burke, Guest Services' Director of Human Resources, and defendant Harry Hanson, Guest Services' Director of Training and Liaison to the CEE program. Guest Services immediately began conducting an investigation into the plaintiff's sexual harassment charges. Hanson and Burke interviewed O'Brien and other individuals and also interviewed the plaintiff twice. After the plaintiff was interviewed but before the investigation had ended, the plaintiff called the University and requested permission to return to school. Shortly thereafter, she left Guest Services and the District of Columbia.

After the plaintiff left Guest Services, Guest Services completed its investigation. The investigation uncovered no evidence to support the sexual harassment charges against O'Brien, but did find evidence that O'Brien had used vulgar language. The corporation had a counselling session for O'Brien and placed a memo in her file about the incident.

The plaintiff received a failing grade on one project because she left the CEE program early and left her notes in the District of Columbia. Despite the failing grade, her overall grade for the course was a "B." The plaintiff claims that as a result of her experiences working for Guest Services, she need-

---

1. Defendants Guest Services, Hanson, and Burke filed a joint motion for summary judgment. Defendant O'Brien moved separately for summary judgment. Defendants Hanson, Burke, and O'Brien will be referred to as the "individual defendants."

ed to obtain counselling and missed several months of school and work. She also claims that the incidents robbed her of her love of cooking.

The plaintiff has filed a seven-count complaint, in which she claims that (1) Guest Services violated Title VII's prohibition against sexual harassment; (2) Guest Services breached its contract with the plaintiff and constructively discharged her; (3) Guest Services breached a covenant of good faith and fair dealing with the plaintiff; (4) defendants O'Brien, Hanson, and Burke tortiously interfered with the contract between the plaintiff and Guest Services; (5) all defendants intentionally inflicted emotional distress upon the plaintiff; (6) all defendants negligently inflicted emotional distress upon the plaintiff; and (7) Guest Services negligently supervised its employees. The plaintiff seeks several million dollars in damages.

## II. DISCUSSION

The defendants have moved for summary judgment under Fed.R.Civ.P. 56 on all counts. In order for the Court to grant summary judgment under Rule 56, the moving parties must demonstrate that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). In considering the summary judgment issue, the Court must view all of the evidence in the light most favorable to the plaintiff. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A careful analysis of the record in this case demonstrates that the defendants are entitled to summary judgment.

### A. Title VII Count

Defendant Guest Services argues that the Court should grant summary judgment on the Title VII count because (1) the plaintiff failed to file this suit within 90 days of the issuance of a right to sue letter by the Equal Employment Opportunity Commission ("EEOC"); (2) Guest Services' timely remedial action relieves it of liability; (3) the plaintiff's allegations of *quid pro quo* harass-

ment are legally insufficient; and (4) there is no cause of action under Title VII for sexual harassment involving members of the same gender.

### 1. Timeliness of this Suit

The plaintiff filed a complaint with the EEOC in April of 1993. In her complaint, she provided the EEOC with an address in Yorkville, New York—her permanent address. In July of 1993, the plaintiff's attorney sent a letter to the EEOC indicating that she represented the plaintiff and requesting that all correspondence sent to the plaintiff also be sent to the attorney. When the EEOC did not complete a timely review of the plaintiff's complaint, the plaintiff's attorney requested that the EEOC issue a right to sue letter. The EEOC issued a right to sue letter on August 30, 1993. The letter was sent to an address in Riverside, Rhode Island, where the plaintiff had briefly resided while in school. A copy of the letter was not sent to the plaintiff's attorney. The plaintiff never received the right to sue letter.

On February 15, 1994, the plaintiff's attorney sent a second letter to the EEOC requesting a right to sue letter. On February 24, 1994, the EEOC reissued the right to sue letter. Additionally, Susan Buckingham Reilly, the Director of the EEOC's Washington, D.C. Field Office indicated that the original letter had been returned unclaimed and that the EEOC had inadvertently failed to mail a copy of the right to sue letter to the plaintiff's attorney. The plaintiff filed this action within 90 days after receiving this second right to sue letter.

■ Defendant Guest Services argues that this suit is untimely because it should have been filed within 90 days of the first notice. Ordinarily, a Title VII suit must be filed within 90 days after receipt of a right to sue notice from the EEOC. 42 U.S.C. § 2000e–5(f)(1). However, this 90 day period is like a statute of limitations and subject to equitable tolling. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132–33, 71 L.Ed.2d 234 (1982). The plaintiff asserts that the EEOC erred by failing to send a copy of the right to sue letter to the plain-

tiff's counsel. The plaintiff attaches a sworn declaration from Reilly, the Director of the EEOC's field office. Pl.'s Opp'n to Defs.' Mot. for Summ.J. Ex. 25. The declaration indicates that the EEOC erred by failing to send a copy of the first right to sue letter to the plaintiff's counsel. The declaration also indicates that although an EEOC official, Eric Cohan, obtained the Rhode Island address from the plaintiff or counsel during the investigation, Cohan recalls that he was never asked to send the right to sue notice to the Rhode Island address. The declaration concludes by saying that "Ms. Ryczek was not at all negligent and deserves her day in court." *Id.*

■ When a plaintiff can demonstrate that she failed to receive the right to sue letter because of "fortuitous circumstances," "events beyond [her] control" or "no fault" of her own, the limitations period may be tolled. *Lewis v. Conners Steel Co.,* 673 F.2d 1240, 1243 (11th Cir.1982) (quoting *Franks v. Bowman Transp. Co.,* 495 F.2d 398, 404–05 (5th Cir.1974), *rev'd on other grounds,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976)). Here, the plaintiff has provided the Reilly declaration which strongly suggests that the failure to receive the letter was the EEOC's fault, not the plaintiff's. The Court finds that this declaration is adequate to justify equitable tolling in this case. Therefore, the Court will not dismiss this case on timeliness grounds.

### 2. Remedial Action of Guest Services

Defendant Guest Services next argues that its prompt remedial action relieved it of any liability for the alleged hostile environment sexual harassment. In order for a hostile work environment to exist for the purposes of a Title VII sexual harassment case, the challenged conduct must "ha[ve] the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986). Even when such an environment exists, an employer is not necessarily liable. The *Vinson* court rejected the theory of strict liability for employers and said that liability should be determined based on agency principles. *Id.* at 72, 106 S.Ct. at 2408.

■ A company's liability for a supervisor's actions depends upon (1) whether the supervisor's harassing actions were foreseeable or fell within his scope of employment and (2) even if they were, whether the company responded adequately and effectively to negate liability.[2] *Kauffman v. Allied Signal, Inc., Autolite Division,* 970 F.2d 178, 184 (6th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992). Applying this standard, the Sixth Circuit has found that summary judgment is appropriate when a company's response to a hostile environment claim is "prompt and adequate." *Id.*

■ Defendant Guest Services argues that its response was prompt and adequate because it commenced an investigation on the same day that it first became aware of the alleged sexual harassment by O'Brien. It appears undisputed that defendants Hanson and Burke conducted an investigation in which they interviewed the plaintiff and nine other individuals about the alleged harassment. Pl.'s Opp'n to Defs.' Mot. for Summ.J. Ex. 18. However, before the investigation was completed, the plaintiff left Guest Services. Guest Service's Mot. for Summ.J.Attach.D. Thus, the defendant argues that the plaintiff did not give Guest Services a chance to take any further remedial action.

---

2. It is not absolutely clear whether the plaintiff seeks to hold Guest Services liable under a theory of supervisor or co-worker liability. Some courts have distinguished between these two theories and use different standards for assessing Title VII liability depending upon whether the harasser is a supervisor or co-worker. *See Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 803–804 (6th Cir.1994) (employer liability imposed in co-worker discrimination case when employer knew or should have known about improper conduct, but employer can be liable for supervisor's discrimination without regard to whether employer actually knew or should have known about improper conduct). Although it is not clear that this distinction is followed in this Circuit, the Court finds that summary judgment is appropriate under either theory in light of Guest Services' prompt and adequate remedial actions. Such corrective action can relieve an employer of liability under either theory. *Id.*

The plaintiff argues that there are genuine issues of fact concerning the adequacy of the actions taken by Guest Services. She vociferously argues that Guest Services acted improperly because it ordered her to work with O'Brien even after the sexual harassment complaint was filed. However, the plaintiff has pointed to nothing in the record to support this allegation. Absent some evidence that Guest Services actually attempted to force the plaintiff to work with O'Brien after the complaint was filed, this bare allegation is not adequate to raise a genuine issue of material fact.[3]

The plaintiff also asserts that Guest Services should have known about O'Brien's harassing activities before the plaintiff filed the harassment complaint. Again, she cites to nothing in the record to suggest that Guest Services was or should have been aware that the plaintiff or other employees had ever been victims a hostile environment created by O'Brien.[4] At best, the record reflects that Guest Services should have been aware that O'Brien used foul language. This is not a sufficient basis for Title VII liability. Further, regardless of whether Guest Services knew about O'Brien's actions or could have reasonably foreseen O'Brien's harassment, the company's response to the alleged harassment was sufficiently prompt and adequate to negate any liability.

The plaintiff attempts to challenge the sufficiency of Guest Services' response by asserting that Hanson and Burke did not conduct a fair investigation. Specifically, she claims that Hanson and Burke made her uncomfortable because they were accusatory, asked intrusive personal questions, and did not believe her. Pl.'s Opp'n to Defs.' Mot. for Summ.J.Ex. 34–35. However, even viewing the facts in the light most favorable to the plaintiff, this does not demonstrate that Guest Services failed to take prompt and appropriate remedial action. The plaintiff has presented no evidence to suggest that Guest Services acted unreasonably by delaying remedial action or by taking action that was not reasonably likely to prevent the alleged harassment from recurring. *Guess v. Bethlehem Steel Corp.*, 913 F.2d 463, 465 (7th Cir.1990). Even if the investigation was not handled perfectly, the plaintiff has presented no evidence to suggest that Guest Services did anything that would have allowed any harassment to continue. *See Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 535 (7th Cir.1993) ("Although AT & T's remedial efforts did not meet Saxton's expectations,

---

**3.** There appears to be some factual dispute concerning whether the plaintiff was actually told that she was going to be transferred back to the Air and Space Museum or whether she was simply asked to work at a Board of Trustees dinner scheduled for February 11, 1993. The plaintiff's journal expresses concern about the Board of Trustees dinner. *See* Pl.'s Opp'n to Defs.' Mot. for Summ.J.Ex. 34. In contrast, the plaintiff's deposition testimony emphatically states that she had been told that she would be transferred back to the Air and Space Museum. *See id.* Ex. 17. Regardless of this factual conflict, nothing in the record indicates that Guest Services attempted to proceed with either plan after the plaintiff filed her sexual harassment complaint with the company.

**4.** As stated in footnote 2, *supra*, whether Guest Services knew or should have known about O'Brien's actions may not be relevant to determining Guest Services' liability. Nevertheless, at oral argument, the plaintiff stated that Guest Services should have been aware of O'Brien's conduct because another employee, Chef Marcel Langlais, was a friend of O'Brien's and had also speculated about the size of the plaintiff's breasts. The only evidence of Langlais' involvement or knowledge of sexual harassment is the plaintiff's deposition testimony that O'Brien had told her that Langlais and O'Brien had speculated about the size of the plaintiff's breasts. Pl.'s Opp'n to Defs.' Mot. for Summ.J.Ex. 12. Even assuming that this hearsay statement is true, it does not indicate that Guest Services should have been aware of a hostile work environment. This single untoward incident is not sufficient to inform the company of the existence of "severe and pervasive" conduct that created an objectively hostile or abusive work environment. *Harris v. Forklift Sys., Inc.*, —— U.S. ——, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).

At oral argument, the plaintiff also stated that Guest Services should have been aware of O'Brien's conduct because the plaintiff had told another supervisor, Jennifer Lamson, about the conduct. However, the Court has carefully reviewed the record and has found nothing to support this assertion.

Regardless of Guest Services' knowledge, the plaintiff has pointed to nothing in the record that would suggest that the company unduly delayed or hindered its investigation of the plaintiff's allegations or that she was subjected to additional harassment because Guest Services was slow to react.

they were both timely and reasonably likely to prevent the conduct underlying her complaint from recurring"). Here, it is undisputed that Guest Services immediately began an investigation after the plaintiff complained about O'Brien. Although the plaintiff was not satisfied with the manner in which the investigation was conducted, she has pointed to no evidence of a "significant shortcoming" on the part of Guest Services that would suggest that the timing or quality of the investigation provided O'Brien with further opportunities to harass the plaintiff. *Id.* at 535. By leaving Guest Services within days of filing her complaint when there was no imminent threat of continued harassment by O'Brien, the plaintiff did not allow the investigation to run its course and prevented Guest Services from exploring all of its possible remedial options.[5]

The plaintiff finally argues that the result of Guest Services' investigation was inadequate. She argues that counselling O'Brien was an inadequate and unsatisfactory response to the plaintiff's complaint. Instead, she asserts that O'Brien should have been subject to a reprimand or other more severe sanctions. However, "an employer, in order to avoid liability for the discriminatory conduct of an employee, does not have to necessarily discipline or terminate the offending employee as long as the employer takes corrective action reasonably likely to prevent the offending conduct from reoccurring." *Talanda v. KFC Nat'l Management Co.*, 863 F.Supp. 664, 668 (N.D.Ill.1994). Where, as here, Guest Services counselled O'Brien about her behavior and the plaintiff's voluntary departure guaranteed that the offending conduct could not occur again, the corrective measures were not so inadequate as to violate Title VII.

After carefully reviewing the record, the Court finds that the plaintiff's Title VII hostile environment claim cannot survive summary judgment. The plaintiff has failed to raise any genuine issue of material fact that would suggest that Guest Services failed to respond to the plaintiff's complaint in a prompt, adequate, and effective fashion.

### 3. Quid Pro Quo Harassment

■ Defendant Guest Services further argues that it is entitled to summary judgment on the issue of *quid pro quo* harassment. In order to prevail under this theory, a plaintiff must prove:

(1) that the employee was a member of a protected class; (2) that the employee was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; (3) that the harassment complained of was based on sex; (4) that the employee's submission to the unwelcomed advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and (5) the existence of respondeat superior liability.

*Kauffman,* 970 F.2d at 186 (quoting *Highlander v. K.F.C. Nat'l Management Co.*, 805 F.2d 644, 648 (6th Cir.1986)).

The only *quid pro quo* allegation made by the plaintiff is that she believed that if she did not submit to O'Brien's advances, her grade would suffer. Pl.'s Am.Compl. ¶ 21. Defendant Guest Services argues that this is not a *quid pro quo* case because it fails to satisfy *Kauffman's* fourth element—that the employee's submission to the unwelcome advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment. The plaintiff does not contend that she submitted to O'Brien's demands or that she received an unfavorable evaluation from O'Brien. In fact, the plaintiff admitted in her deposition that the comments were "favorable." Guest Services' Reply in Supp. of Mot. for Summ.J.Ex.D. In *Highlander,* the Sixth Circuit found that a plaintiff failed to prove a *quid pro quo* action when "the record was totally devoid of any evidence tending to demonstrate that plaintiff was de-

---

5. It appears from the record that the plaintiff had not worked with O'Brien in several weeks. Additionally, there is nothing in the record that would indicate that Guest Services was going to force the plaintiff to work with O'Brien despite the plaintiff's sexual harassment complaint.

nied a job benefit or suffered a job detriment as a result of her failure to engage in the activity suggested by" her supervisor. 805 F.2d at 649. Here, the Court finds that the record is similarly devoid of any evidence that the plaintiff was denied a job benefit or suffered a job detriment as a result of her failure to submit to O'Brien's sexual overtures. Therefore, summary judgment is appropriate on this issue.

### 4. Same Sex Sexual Harassment

In a supplemental motion filed after the briefing of the summary judgment motions was complete, defendants Guest Services, Hanson, and Burke argue that Title VII does not cover sexual harassment involving members of the same gender. The supplemental motion relies chiefly upon a recent decision by Judge Harvey in the District Court of Maryland, *Hopkins v. Baltimore Gas & Elec. Co.,* 871 F.Supp. 822, 834–35 (D.Md.1994) ("Title VII does not provide a cause of action for an employee who claims to have been the victim of sexual harassment by a supervisor or co-worker of the same gender"). Judge Harvey's decision is consistent with the recent holdings of several other federal courts. *See Garcia v. Elf Atochem North Am.,* 28 F.3d 446, 452 (5th Cir.1994) (harassment by male supervisor against male subordinate not actionable under Title VII despite sexual overtones of harassment because Title VII addresses gender discrimination); *Myers v. City of El Paso,* 874 F.Supp. 1546, 1547 (W.D.Tex.1995) (sexual harassment by female supervisor against female subordinate not actionable under Title VII); *Vandeventer v. Wabash Nat'l Corp.,* 867 F.Supp. 790, 796 (N.D.Ind.1994) (harassment by males against male homosexual not actionable under Title VII because Title VII aimed at gender-biased atmosphere and no evidence that male harassed because he was male); *Goluszek v. Smith,* 697 F.Supp. 1452, 1455–56 (N.D.Ill. 1988) (sexual harassment against male in male-dominated environment not actionable

under Title VII because action would be inconsistent with Title VII's goal of remedying discrimination and correcting imbalance of power).

This Court is unaware of any holdings in the District of Columbia Circuit on the question of whether Title VII applies to sexual harassment by a female supervisor against a female subordinate. However, two opinions contain dicta relating to this issue. In a footnote in *Barnes v. Costle,* 561 F.2d 983, 990 (D.C.Cir.1977), Judge Spottswood Robinson stated that harassment by a homosexual superior would be actionable under Title VII because "[i]n each instance, the legal problem would be identical to that confronting us now—the exaction of a condition which, but for his or her sex, the employee would not have faced." *Id.* at 990 n. 55. The court further stated that "[i]n the case of a bisexual superior, the insistence upon sexual favors would not constitute gender discrimination because it would apply to male and female employees alike." *Id.* The Court repeated this statement in *Bundy v. Jackson,* 641 F.2d 934, 942 n. 7 (D.C.Cir.1981). Thus, it appears that this Circuit does not interpret Title VII to preclude all Title VII cases involving sexual harassment in which a supervisor harasses a member of the same gender. However, this Circuit apparently does not recognize a Title VII cause of action for sexual harassment when the supervisor is bisexual.[6]

In light of the language in *Barnes* and *Bundy,* the parties here hotly dispute the issue of defendant O'Brien's sexual orientation. Defendant Guest Services argues that O'Brien is a bisexual and provides deposition testimony to that effect. Defs.' Supp.Mot. for Summ.J.Attach.B. The plaintiff argues that there is an issue of fact as to O'Brien's sexual orientation and points to times when O'Brien referred to herself as a "lesbian" and statements of other individuals indicating that O'Brien is a lesbian. Pl.'s Supp.Opp'n

---

6. The Court notes that this language in *Barnes* could be interpreted to prohibit Title VII sexual harassment cases any time a supervisor is bisexual. Alternatively, the language could mean that a supervisor is only immune from Title VII sexual harassment suits when there is evidence that the supervisor has actually harassed members of both sexes. Under either interpretation, the *Barnes* court's interpretation of Title VII would lead to bizarre results and some rather provocative trial testimony.

742

Ex. A–F. The Court is not well-prepared to resolve such a dispute.

This purported issue of fact suggests a practical flaw in this Circuit's interpretation of Title VII. Assuming that the language in *Barnes* and *Bundy* is the law of this Circuit, any defendant could avoid Title VII liability for sexual harassment by claiming to be a bisexual or by harassing members of both sexes. This would appear to produce an anomalous result: a victim of sexual harassment in the District of Columbia would have a Title VII remedy in all situations except those in which the victim is harassed by a particularly unspeakable cad who harasses both men and women. In addition to this troubling possibility, the prospect of having litigants debate and juries determine the sexual orientation of Title VII defendants is a rather unpleasant one.[7]

Judge Bork apparently foresaw these problems when he dissented from the denial of a rehearing *en banc* in *Vinson v. Taylor*, 760 F.2d 1330, 1333 n. 7 (D.C.Cir.1985). There, Judge Bork argued that Title VII did not apply to sexual harassment, but then reasoned that if sexual harassment was covered by Title VII, "subsidiary doctrines" should be adjusted to prevent against bizarre situations where victims of sexual harassment would have no protection from attacks by bisexuals.[8] *Id.* Given that the Supreme Court has clearly rejected Judge Bork's argument that Title VII does not protect victims of sexual harassment, the courts must now struggle with the conflict between the language of the statute (as it has been interpreted) and the realities of modern sexual politics.[9]

Although this case presents a rather interesting Title VII problem that contains several intellectual and practical challenges, the Court finds that it does not need to rule on the issue. Even assuming *arguendo* that Title VII applies to a situation where a female supervisor sexually harasses a female subordinate, the plaintiff cannot survive summary judgment in this case. As the Court discussed *supra*, defendant Guest Services is entitled to summary judgment on both the hostile environment and *quid pro quo* Title VII claims raised in the plaintiff's amended complaint.

## B. Breach of Contract and Constructive Discharge Claims

In Count II, the plaintiff attempts to recover against defendant Guest Services for breach of contract and constructive discharge. Guest Services argues that summary judgment is proper on Count II because the plaintiff did not have an employment contract and because the facts do not establish constructive discharge. The Court agrees.

■ The plaintiff cannot point to the existence of an express employment contract. The only document the plaintiff proffers as a contract between the plaintiff and Guest Ser-

7. One can only speculate as to what would be legally sufficient to submit the issue of a supervisor's bisexuality to the jury. Would the supervisor's sworn statement of his or her bisexuality be adequate? Would the supervisor need to introduce affirmative evidence of his liaisons with members of both sexes? Surely Congress did not anticipate that the language of Title VII would eventually produce such concerns.

8. At least one court has denied summary judgment by relying in part upon Judge Bork's reasoning. *See Chiapuzio v. BLT Operating Corp.*, 826 F.Supp. 1334, 1336–38 (D.Wyo.1993) (finding that Title VII could apply when supervisor verbally harassed members of both genders).

9. Of course, the simplest and best solution would be for Congress to amend the language of Title VII to reflect its specific intentions concerning the application *vel non* of the statute to incidents where supervisors sexually harass subordinates of the same gender. Absent such guidance, the courts must struggle with several intellectually unsatisfying options: (1) interpreting Title VII to prohibit sexual harassment claims when supervisors harass members of the same gender, (2) interpreting the statute to preclude only claims against bisexual supervisors or (3) interpreting the statute to cover sexual harassment by any individual, regardless of gender. This last interpretation would appear to require the court to interpret the word "sex" as used in Title VII to mean something more than gender. At least one commentator has argued in favor of such a novel interpretation. *See* Samuel A. Marcosson, *Harassment on the Basis of Sexual Orientation: A Claim of Sex Discrimination Under Title VII*, 81 Geo.L.J. 1, 14–15 (1992) (arguing that Title VII should be interpreted to apply to all "sex-based" harassment, regardless of whether the harasser is motivated by the victim's gender).

vices is the CEE program agreement between Johnson & Wales University and Guest Services. Nothing in the record suggests that the plaintiff was a party to this agreement. Thus, it is clear that no employment contract existed. Because there was no employment contract, the plaintiff's breach of contract and constructive discharge claims are barred by the general at-will employment doctrine. *Scales v. George Washington Univ.*, Civil Action No. 89–00796–LFO, 1991 WL 257975, at \*2, 1991 U.S.Dist. LEXIS 16765, at \*4 (D.D.C. November 18, 1991).

█ Even assuming that a contract existed, the plaintiff's constructive discharge claim cannot survive summary judgment. In order to demonstrate constructive discharge in an employment discrimination case, the plaintiff must not only establish that there was intentional discrimination, but also that there were aggravating factors. *Dashnaw v. Pena*, 12 F.3d 1112, 1115 (D.C.Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 417, 130 L.Ed.2d 333 (1994). The plaintiff must therefore show that there was discrimination and that Guest Services "deliberately [made] working conditions intolerable and [drove] the employee to an involuntary quit." *Katradis v. Dav–El of Washington, D.C.*, 846 F.2d 1482, 1485 (D.C.Cir.1988) (quoting *Atlantic Richfield Co. v. District of Columbia Comm'n on Human Rights*, 515 A.2d 1095, 1101 (D.C.1986)). Thus, a constructive discharge only occurs where "the employer creates or 'tolerates discriminatory working conditions that would drive a reasonable person to resign.'" *Id.* (quoting *Hopkins v. Price Waterhouse*, 825 F.2d 458, 472 (D.C.Cir. 1987), *rev'd on other grounds*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). Even assuming that there was a showing of discrimination, there is nothing in the record to indicate that Guest Services did anything to make the plaintiff's working conditions intolerable. Therefore, the Court will grant the defendant's request for summary judgment on Count II.

## C. Breach of Covenant of Good Faith and Fair Dealing

█ Because the plaintiff was an at-will employee and the District of Columbia does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing arising out of the at-will employment relationship, defendant Guest Services is also entitled to summary judgment on Count III. *Minihan v. American Pharmaceutical Assoc.*, 812 F.2d 726, 729 n. 2 (D.C.Cir.1987). Additionally, the Court can find nothing in the record to support the plaintiff's allegations that a covenant of good faith and fair dealing has been breached. Therefore, the Court will grant the defendant's motion for summary judgment with respect to Count III.

## D. Interference with Contractual Relations

In Count IV, the plaintiff alleges that the individual defendants tortiously interfered with the contract between the plaintiff and Guest Services. Because no contract existed between the plaintiff and Guest Services, the plaintiff cannot establish an essential element of this tort. *See Sorrells v. Garfinckel's* 565 A.2d 285, 289 (D.C.1989) (plaintiff must establish existence of contract to recover for tortious interference with contractual relations). Even if the plaintiff could establish a *prima facie* case, summary judgment would nevertheless be proper because there is no evidence that any of the individual defendants impeded or prevented the plaintiff from performing her employment duties. *Gant v. Davis Memorial Goodwill Industries, Inc.*, Civil Action No. 91–724, 1991 WL 490033, at \*3–6, 1991 U.S.Dist. LEXIS 20347, at \*9–18 (D.D.C. August 16, 1991). Therefore, the Court will grant the individual defendants' motions for summary judgment on Count IV.

## E. Intentional Infliction of Emotional Distress

The plaintiff has conceded that the statute of limitations has run on her claim for intentional infliction of emotional distress. She therefore consents to the dismissal of this claim. Accordingly, the Court will grant the defendants' motions for summary judgment with respect to Count V.

## F. Negligent Infliction of Emotional Distress

 The plaintiff claims that all of the defendants are liable for negligent infliction of emotional distress. Under District of Columbia law, a plaintiff can recover for negligent infliction of emotional distress in two situations: (1) when the distress results "from a direct physical injury" *Mackey v. United States,* 8 F.3d 826, 831 (D.C.Cir.1993) (quoting *District of Columbia v. McNeill,* 613 A.2d 940, 943 (D.C.1992)); and (2) when there is no physical impact, but the defendant's negligence places the plaintiff in a zone of physical danger where the plaintiff fears for his or her own safety." *McNeill,* 613 A.2d at 943. In the first type of situation, the physical injury need not be substantial. *Asuncion v. Columbia Hosp. for Women,* 514 A.2d 1187, 1189 (D.C.1986). In order to recover under this tort, the emotional distress must be "serious and verifiable." *Jones v. Howard Univ., Inc.,* 589 A.2d 419, 424 (D.C.1991).

 It is clear that the plaintiff cannot recover under the first theory. She sustained no direct physical injury from the alleged harassment. Thus, even if the plaintiff suffered emotional distress, there does not appear to be a physical impact to which the injuries can be traced. The allegations that she was touched by O'Brien cannot amount to the "direct physical injury" that the cases require. *Mackey,* 8 F.3d at 831. In fact, the plaintiff admitted during her deposition that she suffered no physical injury while working at Guest Services. Guest Services' Mot. for Summ.J.Attach.D.

The plaintiff also fails to satisfy the requirements of the zone of danger theory. A recent decision of the District of Columbia Court of Appeals affirmed a directed verdict against a plaintiff's claim of negligent infliction of emotional distress because the plaintiff offered no evidence that his "physical safety was imminently endangered." *McMillan v. National R.R. Passenger Corp.,* 648 A.2d 428 (D.C.1994). In so holding, the court found that the plaintiff had not demonstrated that the "threat of injury claimed was more than minimal or negligible." *Id.* The plaintiff here has likewise presented no evidence that her physical safety was imminently endangered. There is nothing in the record to suggest that the plaintiff was imminently afraid that O'Brien was somehow going to force herself upon the plaintiff or otherwise hurt her.[10] In the absence of some evidence that the plaintiff's physical safety was imminently endangered and that such threatened injury was not minimal, the plaintiff's claim cannot survive summary judgment. Accordingly, the Court will grant all of the defendants' motions for summary judgment on Count VI.

## G. Negligent Supervision of Supervisory Employees

 The final count of the plaintiff's complaint alleges that Guest Services is liable because it was negligent in supervising its employees. This tort has been recognized in the District of Columbia. *Tarpeh–Doe v. United States,* 28 F.3d 120, 123 (D.C.Cir. 1994). As with any negligence action, the plaintiff bears the burden of demonstrating the applicable standard of care, breach thereof, and the causal relationship between the breach and the damages. *Id.* Even viewing the facts in the light most favorable to the plaintiff, the Court is unable to find any evidence that would suggest that Guest Services breached any duty to the plaintiff. Additionally, there is nothing that would suggest that Guest Services knew or should have known about any improper activity or that Guest Services' negligence caused damages to the plaintiff. Accordingly, the Court will grant defendant Guest Services' motion for summary judgment on Count VII.

---

10. There is one statement in the plaintiff's deposition in which she claims that O'Brien once told the plaintiff that she should be afraid because O'Brien could "break her in two." Pl.'s Opp'n to Defs.' Mot. for Summ.J.Ex. 9. However, even viewing this statement in the light most favorable to the plaintiff, there is nothing in the record that would suggest that the plaintiff interpreted these statements as a threat, let alone a threat of imminent bodily injury. In fact, the plaintiff does not even point to this statement as evidence of a threat to her physical safety in her discussion of the negligent infliction of emotional distress claim. *See id.* at 28–34. She simply argues that she feared that O'Brien might touch her again. *Id.*

## III. CONCLUSION

Viewing the facts in the light most favorable to the plaintiff, it certainly appears that defendant O'Brien treated the plaintiff in an unpleasant and unprofessional manner. However, the record before the Court does not demonstrate that Guest Services can be held liable under Title VII in light of its prompt and adequate remedial actions. Additionally, the plaintiff's tort and contract claims each suffer from fatal problems. Thus, although the Court in no way questions the veracity of the plaintiff's allegations, it finds that the defendants are entitled to summary judgment on every one of the plaintiff's claims. Therefore, the Court will grant the defendants' motions for summary judgment and will dismiss this case.[11]

### *ORDER*

For the reasons expressed in the Court's Memorandum Opinion, it is this 24th day of February, 1994, hereby

ORDERED that Defendants Guest Services, Inc., Harry Hanson and Holly Burke's Motion for Summary Judgment is GRANTED; and it is further

ORDERED that Defendant O'Brien's Motion for Summary Judgment is GRANTED; and it is further

ORDERED that this case is DISMISSED.

---

11. Because of the Court's ruling, it does not need to address the defendants' argument that the plaintiff's tort claims are barred because she has not exhausted her remedies under the District of Columbia Workers' Compensation Act, D.C.Code § 36–304. The Court also does not need to address the defendants' motion to strike two of the plaintiff's exhibits.